RICHARD A. ALTMAN
Attorney for Plaintiffs
285 West Fourth Street
New York, New York 10014
212.633.0123

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

DOSS, INC. and YOON YOUNG IM,

                         Plaintiffs,                      08-cv-10577 (LAP)

        -against-

CHRISTIES INC.,
                  Defendant.

--------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION TO DISMISS COMPLAINT

Dated: March 23, 2009

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I:
THE WARRANTY OF TITLE WAS BREACHED, SOLELY BECAUSE
THE ROSENBERG CLAIM IS COLORABLE.  PLAINTIFFS NEED
NOT PROVE THE VALIDITY OF THE CLAIM IN ORDER TO
RECOVER FROM CHRISTIE'S.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT II:
ALL OF THE CLAIMS ARE TIMELY, BECAUSE THEY DID NOT
ARISE UNTIL ASSERTION OF THE ROSENBERG CLAIM.. . . . . . . . . . . . . . . . . . . . . . . 9

POINT III:
ALL OF THE CLAIMS ARE LEGALLY SUFFICIENT... . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Second and Third Claims:  Failure of Consideration and Rescission. . . . . . . . . . . . . . . . . . . . . 14
Fourth Claim:  Unjust Enrichment.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Fifth Claim: Negligent Misrepresentation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

Plaintiffs' attorney, Richard A. Altman, submits this memorandum of law in opposition to defendant's motion to dismiss the complaint on the grounds of failure to state a claim and the statute of limitations. All of the claims in the complaint are legally sufficient and timely. The motion should be denied and defendant should be ordered to serve an answer.

## PRELIMINARY STATEMENT

The facts are simple. As set out in the complaint, and as supplemented by the declaration of plaintiffs' counsel accompanying this motion, plaintiffs purchased an oil painting by French artist Marie Laurencin at an auction held by defendant Christie's in New York City in 1991 (Complaint, ¶¶ 8, 9 at 2). Plaintiffs paid the sum of $235,000 for the painting, including the buyer's premium, and they took delivery of the painting (*id.*, ¶10).

In 2006, plaintiffs' agent consigned the painting for sale with Sotheby's in London (*id.*, ¶15 at 3). During its pre-sale investigation, Sotheby's discovered that the painting had been stolen by the Nazis from Paul Rosenberg, a prominent Paris art dealer during the occupation of Paris during the Second World War. Sotheby's has refused to sell the painting, and it is holding it in London, willing at any time to deliver it pursuant to an agreement between the interested parties (Altman decl., ¶4 at 2).

The Rosenberg collection was an astonishing and lengthy list of works by some of the greatest artists of the 19th and 20th centuries, including Bonnard, Braque, Courbet, Degas, Delacroix, Matisse, Picasso and Renoir. The list of missing paintings was circulated widely in December 1947, and was published by the French government in 1955 (Altman decl., ¶2 at 1; Exh. A at 4-13). The painting is also listed in the Art Loss Registry (*id.*). The Rosenberg family counsel in Paris has demanded its return (Complaint, ¶ 18 at 3), and the Rosenberg family counsel in New York has also

1

demanded its return (Altman decl., ¶3 at 2).  Both counsel have said that they intend to sue plaintiffs to recover the painting if it is not delivered voluntarily.

In January 2008, plaintiffs' counsel informed defendant of the Rosenberg claim, provided extensive documentation to support that claim, and demanded an investigation and restitution to plaintiffs, based upon Christie's failure to have delivered good and unencumbered title to the painting.  Christie's never responded, and plaintiffs commenced this action on December 5, 2008.  Christie's has failed and refused to make restitution, and now moves to dismiss the complaint in its entirety.

One simple fact should be kept in mind:  Despite Christie's self-serving and self-congratulatory description of its attempts to resolve the matter and its careful investigations, they sold plaintiffs a painting whose title and provenance were questionable at the time, and which has now proven to be unsaleable.  Christie's at the least should have known that any works of art located in Western Europe during the Nazi era are likely to have clouds on title.  It is frankly shocking that a supposedly reputable auction house disclaims any responsibility for their failure to have conveyed good title to a valuable work of art, and for having sold arguably stolen property, or at the least property which their unknown consignor may not have owned.  What Christie's actually knew about the painting's history, and when it knew whatever it knew, are questions which will be addressed during discovery.  But the claims asserted are timely and are legally sufficient.  The motion should be denied, defendant should answer, and discovery should proceed.

Christie's makes two principal arguments in favor of dismissal: The claims are all untimely because the painting was purchased in 1991, and that date, according to defendant, is when the claims arose, despite that plaintiffs had no idea of the claim that the painting had been stolen until

2

2007.  Second, the complaint fails to state any claims, because essential allegations are missing.  In particular, Christie's argues that the Rosenberg claim is only a claim, and that plaintiffs cannot recover because they have not alleged that the Rosenberg heirs actually own the painting.  Moreover, because the painting is in the possession of Sotheby's, plaintiffs cannot deliver it to anyone.

As will be shown, the sale violated the contract between the parties, the Uniform Commercial Code, and regulations of the City of New York governing auction houses, not to mention New York common law, all of which make defendant's obligation to convey good title absolute and unconditional.  Plaintiffs simply wanted to buy a painting.  They paid for it, but instead of buying a painting, they have found that instead they bought a lawsuit, and they may indeed may be defendants in another one, brought by the heirs of the original owner.

The fundamental issue which underlies all of the claims is when they accrued.  As will be shown, the Rosenberg claim did not arise until demand was made for the return of the painting.  And until the demand, there was no basis for plaintiffs to doubt that they had good title, and there would have been no possible basis upon which they could have brought suit.  Therefore all of the claims are timely.  Second, all of the legal theories upon which the claims are predicated are sufficiently pleaded.

## POINT I

### THE WARRANTY OF TITLE WAS BREACHED, SOLELY BECAUSE THE ROSENBERG CLAIM IS COLORABLE.  PLAINTIFFS NEED NOT PROVE THE VALIDITY OF THE CLAIM IN ORDER TO RECOVER FROM CHRISTIE'S.

Defendant argues throughout its memorandum that plaintiffs fail to state a claim because they do not allege that title to the painting is actually in another, and that without such an allegation, there can be no claim for breach of the warranty of title.  Defendant is wrong; there is no such requirement.

3

All that is necessary to state a claim for breach of the warranty is that the third party's claim be colorable, not that it be established, and it cannot reasonably be disputed that Rosenberg claim is colorable.

There are two preliminary points. First, Christie's is liable even though they sold a painting on behalf of a consignor and did not actually purport to own it. An auction house is the agent of a consignor of an item for auction. *Cristallina S.A. v. Christie, Manson & Woods*, 117 A.D.2d 284, 502 N.Y.S.2d 165 (1st Dept.1986). "An agent is liable as a principal if the fact of the agency is not known by the customer, i.e., the third party with whom he deals. Even though he knows of the agency, the customer may hold the agent as a principal if the identity of the principal is not made known or is not known to him at or before the making of the contract." *Unger v. Travel Arrangements, Inc.*, 25 A.D.2d 40, 47 (1st Dept.1966)(citations omitted). The catalog identifies the painting as "Property from a PRIVATE COLLECTION" (Altman decl., Exh. A at 19; emphasis in original). Thus Christie's acted for an undisclosed principal, and is liable. *See also Meyer v. Redmond*, 205 N.Y. 478, 98 N.E. 906 (1912).

Second, Christie's is able to identify its consignor (although it has not done so) and has a full remedy against that consignor in the event it is held liable here. N.Y.Gen.Bus. L. § 25 requires Christie's to maintain complete records of the transaction, and presumably those will be turned over during discovery.[1]

---

[1] "The business of an auctioneer, while perfectly legal, has always been affected with a public interest and subject to legislative restriction." *Biddles, Inc. v. Enright*, 239 N.Y. 354, 365 (1925).

4

We now examine the nature of the warranty. There can be no question that there is a warranty of absolute and unencumbered title in every sale of personal property in general and artworks in particular. There are two provisions which apply to the present transaction, and both of them state that there is an absolute warranty by an auctioneer of title in the goods sold. The first one, generally applicable to all sales of goods, is N.Y.U.C.C. § 2-312, which reads in pertinent part as follows:

> Section 2-312. Warranty of Title and Against Infringement; Buyer's Obligation Against Infringement.
> (1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that (a) the title conveyed shall be good, and its transfer rightful; and (b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.
> (2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that it is purporting to sell only such right or title as it or a third person may have.

This comports with New York common law: "In every case of a sale of personal property there is an implied warranty of title, and this is analogous to a covenant for quiet enjoyment of land. The effect of such a warranty is to guarantee the purchaser against eviction or injury from other parties." *McGriffin v. Baird*, 62 N.Y. 329, 331 (1875)(citation omitted); *McClure v. Central Trust Co.*, 165 N.Y. 108 (1900); *Burt v. Dewey*, 40 N.Y. 283 (1869).

There is also in the City of New York a specific regulation applicable to auctioneers:

> Rules of the City of New York, Title 6, Dept. Of Consumer Affairs. Chapter 2: Licenses/Subchapter M: Auctioneers. § 2-124 Prohibited Practices:
>
> (a) An auctioneer may not disclaim warranty of title of any item sold at auction. The auctioneer shall reimburse any purchaser in an amount equal to the successful bid at auction plus any buyer's commission paid in the event it is determined that the purchaser has not acquired transferrable title to the item.

5

The regulations were published twice for comments in the City Record, were published for adoption on March 13, 1987, and became effective April 13, 1987. See 1 Lerner & Bresler, *Art Law* at 449 (3rd ed. 2005). It is disingenuous for defendant, one of the most prominent auction houses in the City of New York, if not the world[2], to refer to "an uncited reference" (Def. Mem. at 7 n. 5) to this regulation in the complaint, given that it has governed their conduct for two decades, and they presumably have more than a passing familiarity with it. The regulation is an additional basis for plaintiffs' claims, and arguably provides the basis for a cause of action on its own, even apart from the U.C.C. It clearly applies to this transaction, having been in effect in 1991. It also negates any possible application of U.C.C. 2-312 subd. 2, so that even though it is understood that Christie's does not own what it sells, it must nonetheless warrant title.

It is worth noting that the auction catalog of the sale contains no provisions regarding title. The only warranty in the auction catalog is a warranty of authenticity of authorship for a period of six years from the date of sale, and a specific disclaimer of any other warranties whatsoever (Patella affid., Exh. B at 5). However, both the N.Y.U.C.C. and the Rules of the Department of Consumer Affairs impose an unconditional and non-waivable warranty of title upon any auction house, so the fact that the catalog says nothing about title is not significant. "Since the U.C.C.'s objective is to prevent surprise, general disclaimer language that merely negates all warranties does not nullify the warranty of title, because it does not give the buyer reason to know of any risk of title failure." 1 Lerner & Bresler, *Art Law* at 92 (3rd ed.2005).

---

[2] The auction catalog (at 3) describes Christie's as "the world's oldest fine art auctioneers."

Thus, there is an unconditional and absolute warranty of title. Christie's argues, however, that the cloud on title in this case is insufficient, and that without an allegation that the painting is actually owned by the Rosenberg heirs, plaintiffs have no claim for breach of the warranty. This is not the law. Christie's correctly notes that there is a conflict in the cases over the extent of the burden upon a buyer whose title has been questioned by a third party. However, they overstate the extent of the conflict. The overwhelming majority view (and the position of the UCC) is that the warranty of title is breached so long as the third party's claim is colorable, and that the owner need not litigate to determine the validity of that claim. Rather, in the words of the Official Comment 1, so long as there is a "substantial shadow" on the purchaser's title, the warranty has been breached.

The cases which express the majority view are *American Container Corp. v. Hanley Trucking Corp.,* 111 N.J.Super. 322, 332,268 A.2d 313, 318 (Ch.Div.1970)(§ 2-312 "applies to third party claims of title no matter whether eventually determined to be inferior or superior to the buyer's ownership"); *Jefferson v. Jones,* 286 Md. 544, 408 A.2d 1036 (1979); *City Car Sales, Inc. v. McAlpin,*380 So.2d 865 (Ala.Civ.App.1979), *cert.den.,*380 So.2d 869 (Ala.1980); *Wright v. Vickaryous,*611 P.2d 20 (Alaska 1980); *Ricklefs v.Clemens,* 216 Kan. 128, 531 P.2d 94 (1975); *John St. Auto Wrecking v. Motors Ins. Corp.,* 56 Misc.2d 232, 288 N.Y.S.2d 281 (1968); *Marin v. Francisca Reyes, Inc.,* 147 Misc. 136, 262 N.Y.S. 577 (Sup.N.Y.Co.1931)("As matter of fact, the title was disputed, and up to the time of the trial a claim made against the painting. A reasonable doubt as to the title is sufficient to authorize its rejection.")(citation and quotation marks omitted); *Catlin Aviation Co. v. Equilease Corp.,* 626 P.2d 857, 860 (Okla.1981); *Saenz Motor v. Big H Auto Auction, Inc.,* 653 S.W.2d 521 (Tex.App.1983), *aff'd* 665 S.W.2d 756 (Tex.1984).

7

The minority view is stated in *C.F.Sales, Inc., v. Amfert, Inc.,* 344 N.W.2d 543 (Iowa 1983) and *Skates v. Lippert,* 595 S.W.2d 22 (Mo.Ct.App.1979), and apparently requires the purchaser to establish the existence of a superior or paramount title in a third party. No other cases appear to have followed this view.

Further evidence that the majority view is the sound one is that in 2003, U.C.C. § 2-312(1)(a) was amended to codify it. The section now reads (addition in italics):

> § 2-312. Warranty of Title and Against Infringement; Buyer's Obligation Against Infringement.
> (1) Subject to subsection (3), there is in a contract for sale a warranty by the seller that: (a) the title conveyed shall be good and its transfer rightful *and shall not unreasonably expose the buyer to litigation because of any colorable claim to or interest in the goods*;

The official comment to this section says that:

> The subsection now expressly states what the courts have long recognized; further protection for the buyer is needed when the title is burdened by colorable claims that affect the value of the goods. Therefore, not only is the buyer entitled to a good title, but the buyer is also entitled to a marketable title, and until the colorable claim is resolved the market for the goods is impaired. The justification for this rule is that the buyer of goods that are warranted for title has a right to rely on the fact that there will be no need later to have to contest ownership. The mere casting of a substantial shadow over the buyer's title, regardless of the ultimate outcome, violates the warranty of good title.

This amendment has not yet been enacted by the New York Legislature, but in any event, New York follows the majority rule already, as shown by the holdings in *John St. Auto Wrecking* and *Marin, supra.* The reason for the majority rule is simple: plaintiffs bought a painting, not a lawsuit. And the lawsuit, were plaintiffs forced to defend it as Christie's would have them do, would be complex. The plaintiffs themselves are in the British Virgin Islands and South Korea (Complaint, ¶3-4 at 2). Their agent who bought the painting is in Paris and bid on the painting in New York (*id.*, ¶ 8 at 2). The painting itself is in London (Altman decl., ¶ 4 at 2). The demand from the heirs was

8

made in Paris and in New York (*id.*).  What are the laws governing such claims in those jurisdictions, and whose laws should apply?  And even apart from the dubious morality of forcing plaintiffs to fight against a claim of Nazi-looted art made by the owner's heirs, why should it be plaintiffs' burden to defend its ownership in any event and be forced to sort out these complex issues?

The conclusion is that the painting was sold with an absolute warranty of unencumbered title, and that the claim by the Rosenberg heirs is sufficiently colorable to constitute a breach of that warranty.  That is all that is required, and the warranty of title has been breached.

### POINT II

### ALL OF THE CLAIMS ARE TIMELY, BECAUSE THEY DID NOT ARISE UNTIL ASSERTION OF THE ROSENBERG CLAIM.

Christie's next argues that the claims are untimely, in that they all arose in 1991 when plaintiffs purchased the painting.  In support of this proposition, they cite only one provision of law, N.Y.U.C.C. 2-725, which reads in pertinent part as follows:

Section 2-725. Statute of Limitations in Contracts for Sale.
   (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.  By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
   (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Christie's argues that this action is therefore barred by the second sentence of (2), or in other words, that plaintiffs should have sued by 1995, despite that they had no knowledge of the title defect until 2007.  This is incorrect and illogical.  Claims for breach of the warranty of title arise when the owner's position is interfered with, not when the goods are sold.  No case has been found holding

9

that breach of title claims are within this section.  The cases brought under it relate solely to warranties of performance and the like, not title disputes.

It is worth noting that U.C.C. § 2-725 was amended in 2005 to add a new section, 2-725(3)(d), which reads, "[a] right of action for breach of warranty arising under Section 2-312 accrues when the aggrieved party discovers or should have discovered the breach."  The Official Comment says:

> For a warranty of title or a warranty of non-infringement under Section 2-312, subsection (3)(d) provides that a cause of action accrues when the aggrieved party discovers or should have discovered the breach.  In a typical case, the aggrieved party will not discover the breach until it is sued by a party that asserts title to the goods or that asserts an infringement, either event which could be many years after the buyer acquired the goods. This accrual rule allows the aggrieved party appropriate leeway to then bring a claim against the person that made the warranty.

Although this amendment has not been enacted in New York, it would seem to indicate the correct interpretation here.  First of all, title to the painting never actually passed to plaintiffs, because under New York law a thief cannot pass good title.   "[A]ny purchaser of personal property...takes the risk that his title will be no good if his vendor is a thief or has acquired possession from or through a thief. The thief cannot pass good title. The true owner is entitled to recover even if negligent in the care of his property." *Bunge Corp. v. Manufacturers Hanover Trust Co.*, 65 Misc. 2d 829, 318 N.Y.S.2d 819 (Sup.1971)(citing cases).  Thus, assuming that the painting was indeed stolen property, title never actually passed to the plaintiffs, and still has not.

Second, New York unquestionably follows the demand and refusal rule for accrual of claims for the recovery of stolen property, and the statute of limitations does not begin to run until there has been a demand by the rightful owner and a refusal by the person in possession.  In *Menzel v. List*, 28 A.D.2d 516, 253 N.Y.S.2d 43 (1st Dept.1964), *on remand* 49 Misc.2d 300, 267 N.Y.S2d 804

10

(Sup.Ct.1966), *mod. as to damages*, 28 A.D.2d 516, 279 N.Y.S.2d (1st Dept.1967), *rev'd as to damages*, 24 N.Y.2d 91(1969) the rule was first established: "The Statute of Limitations constitutes no bar to the third-party action.  Former section 94 of the Personal Property Law, now repealed, is the only pertinent statute, and the applicable warranty was one relating to 'quiet possession'.  As such, the warranty was not broken until the possession of the painting by List was disturbed, which time was within the statute."  28 A.D.2d 516, 279 N.Y.S.2d at 609.

In the decision made after remand, the trial court in *Menzel v. List* said, "in replevin, as well as conversion, the cause of action against a person who lawfully comes by a chattel arises, not upon the stealing or the taking, but upon the defendant's refusal to convey the chattel upon demand." 267 N.Y.S.2d at 809-10.  Furthermore, "provisions of law for the protection of purchasers in good faith which would defeat restitution [of Nazi confiscations] shall be disregarded." 267 N.Y.S.2d at 819.

The rule of *Menzel v. List* was followed in *Kunstzammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150 (2nd Cir.1987).  In 1988, in *DeWeerth v. Baldinger*, 836 F.2d 104 (2nd Cir.1987), the Second Circuit added a requirement that, although demand and refusal were still required, the true owner had to exercise due diligence prior to making a demand.

However, three years later, the New York State Court of Appeals said that the Second Circuit was wrong in adding a duty of reasonable diligence.  *See Solomon R. Guggenheim Foundation v. Lubell*, 77 N.Y.2d 311, 567 N.Y.S.2d 623, 569 N.E.2d 426 (1991), in which the Court firmly established that the sole prerequisite for a replevin claim in "the New York City art market, where masterpieces command extraordinary prices at auction and illicit dealing in stolen merchandise is an industry all its own," (567 N.Y.S.2d at 624) is a demand by the rightful owner and a refusal by the person in possession.  There is no obligation of reasonable diligence on the part of owners of

11

stolen art for purposes of the statute of limitations.[3]  Thus, given that there is no outer limit as a matter of the statute of limitations[4] for the true owner to demand the return of stolen property, the warranty of title must necessarily still run in favor of the plaintiffs.

The Rosenberg family has now made a demand for the return of the painting.  It can be argued whether New York law would apply to their claims, or whether the laws of another jurisdiction would be applicable.  But because the claim against the painting is colorable, it is not plaintiffs' problem to resolve.  To conclude that plaintiffs here have no right to proceed against Christie's leads to the absurd result that plaintiffs have no remedy whatsoever for the inevitable loss of their painting unless they choose to engage in a second litigation, against the Rosenberg family.  They should not be forced into such an impossible position.

Defendant's extended discussion of *Rosenman v. Ira Spanierman Gallery*, 894 F.2d 28 (2d Cir.1990) is misplaced.  That case involved <u>authenticity</u> of a work of art, not title to it.  It has nothing to do with the present case.  Authenticity of works of art is a controversial subject.  It is well known in the art world that opinions of experts can change over time, and that such opinions can be hotly disputed.  *See generally Catalogues Raisonnés and the Authentication Process: Where the Ivory Tower Meets the Marketplace*, IFAR Journal, Vol. 8 Nos. 3 & 4 (2006).  Probably for this reason, Christie's auction catalog warrants authenticity, but only for six years (Patella affid., Exh. B at 6).

---

[3]  The holding of *Lubell* was followed in *Hoelzer v. City of Stamford*, 933 F.3d 1131 (2nd Cir.1991), *cert.den*.506 U.S. 1035 (1992) and *Golden Budha Corp. v. Canadian Land Co. of America, N.V.*, 931 F.2d 196 (2nd Cir.1991).

[4]  In *Lubell*, the Court of Appeals stated that a laches defense would remain available, but only as a matter of equity, not law.

Title, by contrast, is a far simpler issue, and far easier to prove one way or the other, without becoming the subject of battles between experts.

So too, the defendant's citation of *Jeanneret v. Vichey*, 693 F.2d 259 (2nd Cir.1982) is inapposite. That case did not involve title to a stolen artwork. The government of Italy had claimed that a Matisse painting had been exported in violation of its cultural property laws, and as a result of the dispute the painting had become unsaleable by the dealer who had purchased it. The Second Circuit, while acknowledging the line of New York cases involving title disputes, nonetheless distinguished the facts, and said that there was no authority from the New York courts to govern the situation, and that in any event it was not prepared to hold that the Italian claim by itself represented a breach of the warranty of title, inasmuch as there was no dispute about ownership. The Court said:

> None of the cases from New York or other states cited by the district court deals with a situation such as is presented here. The cases holding that the buyer can recover simply by showing the mere casting of a substantial shadow over his title, regardless of the ultimate outcome, deal with what would be deemed defects in title or with liens or encumbrances in the ordinary meanings of those terms. Professor Nordstrom's seemingly apposite remarks anent a hypothetical sale of a painting in his Handbook of the Law of Sales 186 (1970)("The buyer did not purchase a lawsuit. He purchased a painting."), lose force with respect to this case when it is realized that the author was discussing a true claim of lack of title.

693 F.2d at 266-67 (footnote, quotation marks and citations omitted).

By contrast, Professor Nordstrom's remark seems squarely on point here, in a case involving a true claim of title by a third party, and in a case in which there is ample precedent for reaching the correct result.

Finally, Christie's argues that, given "the complex context of Nazi looting" and that "the volume of claims has become enormous," "it would cut a wide swath" (Mem. at 13-14) were this Court to decide that such claims automatically breached the warranty of title. The simple answer

13

to this is that Christie's cannot have it both ways, simultaneously praising its "active role in trying to keep looted art out of the marketplace" (Mem. at 1) and at the same time expecting its customers to assume the risks and bear the losses if Christie's fails in that role.

In this case, none of the claims accrued until Sotheby's informed plaintiffs that the painting would not be sold due to the Rosenberg claim. Until then, plaintiffs neither knew, nor had reason to know, that their painting was the subject of an adverse claim. Accordingly, plaintiffs' claims against Christie's did not arise until 2007, when they first learned of the Rosenberg's adverse claim, and the statute of limitations has not run against any of them.

## POINT III

## ALL OF THE CLAIMS ARE LEGALLY SUFFICIENT.

There are five claims in the complaint. The first one, for breach of warranty, has already been discussed. The remaining four are all sufficiently pleaded as well.

### Second and Third Claims: Failure of Consideration and Rescission

The claim for failure of consideration is actually a claim for rescission, as the language in the claims state, and they can be considered together. The elements of a claim for rescission based, as this one is, on mutual mistake requires allegations that "both parties...shared the same erroneous belief as to a material fact, and their acts did not in fact accomplish their mutual intent." *Druck Corp. v. Macro Fund Ltd., IIU*, 290 Fed. Appx. 441 (2d Cir.2008).

In *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 48 (2d Cir.1991), the Court, citing New York law, said, "[t]he facts as alleged in the complaint implicate the necessary elements for rescission based on mutual mistake: both parties to the release shared the same erroneous belief as to a material fact, and their acts did not in fact accomplish their mutual intent. We hold that

14

appellants state in the complaint a claim of mutual mistake sufficient to survive a challenge under Rule 12(b)(6)." (citations omitted). Here, the mutual mistake is that plaintiffs and defendant both believed that there was a purchase and sale of a painting, and that with the payment of the purchase price, plaintiffs would acquire good title. The mutual mistake is grounds for rescission.

The fact that defendant did not receive absolute title to the painting goes to the benefit of the bargain, and represents both a failure of consideration and defeats the parties' intentions in making the contract. For purposes of the present claim, all that is necessary is to allege that the parties intended to transfer title to a painting. Regardless of the reason, Christie's did not do so, and that is sufficient.

Under New York law, "rescission is an extraordinary remedy, appropriate only where the breach is found to be material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir. 1980)(internal quotation marks omitted). This standard is clearly satisfied here, and the claim is sufficient.

There is also rescission based upon fraud. Plaintiffs have not alleged that the defendant's breach is willful, and have proceeded up to this point on the assumption that, based upon the facts known to them, Christie's acted in good faith, and assumed that they were transferring absolute title. However, discovery may uncover a different story, especially in light of the facts which were public record at the time of the sale. It was well known in the art world at the time that the Rosenberg collection in Paris had been looted during the Nazi regime. *See generally* Feliciano, *The Lost Museum: The Nazi Conspiracy to Steal the World's Greatest Works of Art*, published in 1997. And the auction catalog here specifically states the provenance as "Galerie Paul Rosenberg, Paris."

15

(Patella affid., Exh. B at 4). So the question of what Christie's knew and when it knew it remains to be established. In any event, "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind," *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987), and thus at this point plaintiffs are entitled to rescission of the contract between them and Christie's, without the necessity of pleading fraud.

As for defendant's argument that plaintiffs cannot tender the painting back (Memo at 9 n. 6), the declaration of plaintiffs' counsel that Sotheby's is willing to deliver the painting to whoever the parties designate (Altman Decl., ¶ 4 at 2), is sufficient. The Court can condition the remedy upon such tender. *See* N.Y.C.P.L.R. 3004: "A party who has received benefits by reason of a transaction that is void or voidable because of fraud, misrepresentation, mistake..., and who...seeks rescission or restitution...shall not be denied relief because of a failure to tender before judgment restoration of such benefits; but the court may make tender of restoration a condition of its judgment..."

"[E]ven an innocent misrepresentation is sufficient ground for rescission. Relief may not be denied because of a failure to tender before judgment restoration of the benefits received; but the court may make a tender of restoration a condition of its judgment, and may otherwise in its judgment so adjust the equities between the parties that unjust enrichment is avoided." *D'Angelo v. Bob Hastings Oldsmobile, Inc.*, 89 A.D.2d 785 (4th Dept.1982), *aff'd* 59 N.Y.2d 773, 464 N.Y.S.2d 724 (1983).

Accordingly, both the second and third claims are sufficiently pleaded.

16

**Fourth Claim:  Unjust Enrichment**

An unjust enrichment claim requires only an allegation that the defendant received from plaintiff property which in good conscience and equity it should not be permitted to retain.  "Under New York law a claim for unjust enrichment has elements of (1) the defendant was enriched; (2) enrichment was at the plaintiff's expense; and (3) the defendant's retention of the benefit would be unjust." *Bartfield v. Murphy*, 578 F. Supp.2d 638, 648-49 (S.D.N.Y.2008).  The claim makes these allegations, and it is sufficient.

The defendant's sole basis for dismissal of this claim is that there can be no claim for unjust enrichment, because there is an express contract between the parties.  But F.R.Civ.P. 8(e)(2) specifically permits inconsistent pleading.  "A party may also state as many separate claims or defenses as the party has regardless of consistency."  If the Court ultimately determines that there is a valid contract between the parties, then this claim will not be sustained.  But if there is no valid contract, then plaintiffs' only basis for recovery is a quasi-contract, unjust enrichment claim.  The existence or absence of a contract is not a basis for dismissal at the pleading stage.  "Rule 8(e)(2) of the Federal Rules of Civil Procedure permits plaintiffs to plead two or more statements of a claim, even within the same count, regardless of consistency."  *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir.1999)(quotation marks omitted).

Accordingly, since defendant's only basis for dismissal of this claim is the existence of a contract between the parties, and since plaintiffs are permitted to plead claims in the alternative, the claim is good and should not be dismissed.

17

**Fifth Claim: Negligent Misrepresentation**

> Under New York law, the elements of a claim for negligent misrepresentation are that: (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.
> *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 2007 U.S. Dist. LEXIS 42639, *15-16 (S.D.N.Y.June 11, 2007).

All of the elements are pleaded here. The "special relationship" need not rise to the level of a fiduciary relationship, so long as there is something beyond an ordinary commercial relationship. In *Kimmell v. Schaefer*, 89 N.Y.2d 257, 652 N.Y.S.2d 71 (1996), the Court said, "[i]n the commercial context, a duty to speak with care exists when the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information...liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." 89 N.Y.2d 263 (quotation marks and citations omitted).

Given that auction houses in this City are closely regulated in the conduct of their business, and given that all sales which they make contain absolute warranties of title, and given their superior resources and expertise in the art market, it is not too much to say that when it comes to questions of title and provenance, they should be liable for negligent misrepresentations. Bidders at auctions are not entitled to absolute warranties regarding everything which may be an incident of the sale, and the general disclaimer of warranties in the auction catalog is no doubt enforceable. But questions

18

of title are the essence of the bargain between auction houses and bidders.  They are non-waivable, and fully enforceable if violated.

The purchaser of an expensive painting has a legitimate expectation that, upon payment of the purchase price, she will acquire absolute, unencumbered title forever.  Whatever the reason for the failure of title, the purchaser at an auction certainly should not be expected to assume the risk and obligation to litigate the validity of the title at some unknown time in the future when the true owner shows up.  At the least, Christie's was negligent in failing to ascertain the true status of the title to the painting before they sold it.  Unlike Sotheby's, which investigated and found out the truth after plaintiffs consigned the painting to them, and then withdrew the painting from auction, Christie's sold a painting which they had no right to sell.  They negligently misrepresented that plaintiffs would acquire absolute title, and should be liable.  The claim is sufficient.

## CONCLUSION

Based upon the foregoing, the Court should deny the defendant's motion to dismiss the complaint and direct them to serve an answer.

Dated: New York, New York
       March 23, 2009

RICHARD A. ALTMAN
Attorney for Plaintiffs
285 West Fourth Street
New York, New York 10014
212.633.0123

19