```
                                         USDC SDNY
                                         DOCUMENT
                                         ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT             DOC #:
SOUTHERN DISTRICT OF NEW YORK            DATE FILED:  9/23/09
```

------------------------------------X
DOSS, INC. & YOON YOUNG IM,         :     08 Civ. 10577 (LAP)
                                    :
                Plaintiffs,         :     MEMORANDUM & ORDER
                                    :
      v.                            :
                                    :
CHRISTIE'S INC.,                    :
                                    :
                Defendant.          :
------------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

Plaintiffs have brought this action seeking to rescind a contract for the sale of a painting and to recover the purchase price. Plaintiffs' Complaint sets forth five purported claims: (1) breach of warranty pursuant to New York Uniform Commercial Code ("N.Y. U.C.C.") § 2-312, (2) failure of consideration, (3) mutual mistake, (4) unjust enrichment, and (5) negligent misrepresentation. Defendant has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that, <u>inter alia</u>, all of Plaintiffs' claims, to the extent they are valid at all, are time-barred. For the reasons set forth herein, Defendant's motion is GRANTED.

I.   BACKGROUND

Plaintiff Doss Inc. ("Doss") is a corporation formed under the laws of the British Virgin Islands. Plaintiff Yoon Young Im ("Im") is a South Korean resident and has a controlling interest in Doss. Defendant Christie's Inc. ("Christie's") is a New York corporation with its principal place of business in New York State. (Compl. ¶¶ 3-5.)

On or about May 9, 1991, Plaintiffs, by way of a Christie's auction in New York City, purchased an oil painting by French artist Marie Laurencin, entitled "Portrait" (the "Painting"), for $235,000, including the buyer's premium. (Id. ¶¶ 8-10.) Plaintiffs took possession of the Painting in 1991 and possessed it continuously until sometime in 2006, at which time Plaintiffs "consigned the painting for sale with the auction house of Sotheby's, in London, England." (Id. ¶¶ 14-15.)

"During the course of their due diligence prior to selling the [painting], Sotheby's uncovered evidence that the painting was stolen by the Nazis from Paul Rosenberg, a well-known Paris art dealer, during the Second World War, while the Nazis occupied Paris." (Id. ¶ 16.) Presumably, Sotheby's informed the Plaintiffs, which was apparently the first time they discovered evidence tending to show the painting had been stolen. The painting is currently in

2

Sotheby's possession, pending resolution of this and any other related actions that may be commenced. (Id. ¶ 20.)[1]

In January 2008, Plaintiffs' counsel informed Christie's of the pending Rosenberg claim to the painting and requested that Christie's "investigate and make restitution" to Plaintiffs. (Id. ¶ 23.) Plaintiffs now bring this action.

II. DISCUSSION

A. Jurisdiction

Subject matter jurisdiction is premised on 28 U.S.C. § 1332. (Compl. ¶ 6.) This Court has subject matter jurisdiction pursuant to § 1332 because this matter in controversy exceeds the sum or value of $75,000 and is between a citizen of New York (Christie's) and citizens of foreign states (Plaintiffs). Christie's does not dispute that personal jurisdiction exists.

B. Choice of Law

As both parties agree that N.Y. U.C.C. must be applied in this action (see generally Compl., passim; Defendant Christie's Inc.'s Memorandum of Law in Support of Motion to Dismiss, passim) and neither party has seriously advocated

---

[1] Plaintiffs state that "[t]he Rosenberg family's Paris counsel has made a demand of plaintiffs' Paris counsel for the return of the Painting, and plaintiffs expect that they will be sued for its return." (Compl. ¶ 18.)

3

for the application of an alternative body of law, this Court concludes that Plaintiffs' claims are governed by the N.Y. U.C.C.  Indeed, the parties' assumption that the N.Y. U.C.C. applies is correct because a proper choice of law analysis would lead to the same result.[2]

---

[2] As this action was properly commenced in this Court, and jurisdiction is premised on diversity, this Court must determine what local law governs Plaintiffs' asserted claims and Defendant's asserted defenses. Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 533 (1949).  To determine which local law applies, a federal court sitting in diversity must apply the conflict of laws rules of the state in which the federal court sits, in this case New York. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  New York conflict of law rules for contract actions are derived from the seminal decision Auten v. Auten, 308 N.Y. 155, 160 (1954), which has led to the rule that New York courts apply the law of the state that has the most significant relationship to the transaction and parties, taking a "center of gravity" or "grouping of contracts" approach. See In re Allstate Ins. Co. and Stolarz, 81 N.Y.2d 219, 227 (1993) (""[T]he traditional choice of law factors" such as the places of contracting and performance are "given heavy weight in [the] analysis.").  New York law applies to this action because the place of contracting and performance--the Christie's auction--were in New York City. (See Compl. ¶ 9.)  The contract of sale also included a choice of law clause specifically referencing the "Uniform Commercial Code adopted in the state where the auction is held" and applying "the law of the state in which the auction is held." (Affidavit of Joseph A. Patella in Support of Defendant Christie's Inc.'s Motion to Dismiss ("Patella Aff."), Ex. B (Contract) ¶¶ 10-11.)  Specifically, the N.Y. U.C.C., Article 2, applies because the contract undoubtedly concerned the sale of goods--viz., a painting.

Oddly, Plaintiff apparently now contends that the statute of limitations analysis should also be governed by New York common law. (cont'd on next page)

4

C.   Rule 12(b)(6) Standard

In deciding a Rule 12(b)(6) motion, a court must accept all of the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  However, the court need not accept as true "[l]egal conclusions, deductions or opinions couched as factual allegations." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

To withstand such a motion to dismiss, the complaint need only allege "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability

---

(cont'd from previous page) (See Memorandum of Law in Opposition to Motion to Dismiss Complaint ("Opp. Br.") at 3, 10-12.)  Plaintiff is mistaken.  When multiple claims are asserted, courts look to the "essence of plaintiff's claim and not to the form in which it is pleaded" to determine which substantive law provision applies. Corcoran v. New York Power Authority, 202 F.3d 530, 544-45 (2d Cir. 1999) (quoting State v. Cortelle Corp., 38 N.Y.2d 83, 86 (1975)).  Thus, Plaintiffs' appeal to the common law "demand and refusal" doctrine, for example, is improper.

requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citations omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

D. Plaintiffs' Claims

i. Breach of Warranty

All of Plaintiffs' claims, except their negligent misrepresentation claim, are varieties of the breach of warranty claim conferred by the N.Y. U.C.C.[3] As such, this Court will focus primarily on the timeliness of the breach of warranty and negligent misrepresentation claims.

According to N.Y. U.C.C. § 2-725 (Statute of Limitations in Contracts for Sale) a claim for breach of warranty must be commenced within four years of tender of delivery of the goods:

---

[3] Although Plaintiffs' Complaint is fashioned so as to make out five claims, Plaintiffs have provided no authority specifying the elements of their "failure of consideration," "mutual mistake" and "unjust enrichment" claims, and thus this Court treats those claims as essentially different theories relating to the breach of warranty claim. In any event, even if those claims were treated as separate and distinct, the longest statutory limitation period available would be six years pursuant to N.Y.C.P.L.R. § 213(1) & (6), and thus they are untimely, however treated. Cf. Foxley, 893 F. Supp. at 1233-34.

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

The tender of delivery in this action unquestionably occurred in 1991. (See Compl. ¶ 2.) Thus, Plaintiffs' breach of warranty claim, to the extent any breach occurred, accrued in 1991, and the breach of warranty claim is now untimely.

Plaintiffs do not contend that the "warranty explicitly extend[ing] to future performance" tolling provision of § 2-725(2) is applicable here. (See Opp. Br. at 9-14.)  Indeed, the only warranty of title they may sue on is provided by N.Y. U.C.C. § 2-312.[4] Section 2-312 provides, in pertinent part,

---

[4] The contract of sale appears not to have included any warranty of good title (in fact, it disclaimed all warranties). Plaintiffs cannot appeal to implied warranties imposed by the common law because the sale of the painting in this action falls squarely within the N.Y. U.C.C. (See Memorandum of Law in Opposition to Motion to Dismiss Complaint at 5.) And, to (cont'd on next page)

7

> there is in a contract for sale a warranty by the seller that
> (a) the title conveyed shall be good, and its transfer rightful; and
> (b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

Clearly, § 2-312 does not provide a warranty explicitly extending to future performance of sold goods.

Rather, Plaintiffs argue that "[c]laims for breach of warranty of title arise when the owner's position is interfered with, not when the goods are sold." (Opp. Br. at 9.)  Plaintiffs cite no authority supporting this proposition.  Section 2-312 does not impose an implied covenant of quiet enjoyment or perpetual warranty on sales contracts. See Marino v. Perna, 629 N.Y.S.2d 669, 672 (N.Y. Civ. Ct. 1995). Rather, § 2-312 warranties appear to be no different

---

(cont'd from previous page) the extent Plaintiffs contend that City Regulations confer a private cause of action or impose an enforceable warranty separate and distinct from the N.Y. U.C.C. § 2-725 warranty, Plaintiffs provide no authority supporting their contention that New York law embraces such a theory.  To the contrary, the City Regulations indicate that "the failure of any licensee to comply with these Rules and Regulations . . . may be deemed a violation of an order of the Commissioner for which the licensee may be subject to sanctions, including a fine or suspension or revocation of a license." 6 R. & Regs. N.Y. City § 6-07.  Accordingly, that theory is rejected.

8

from warranties of merchantability; both are of a limited duration. See id. ("[T]he UCC appears to make no distinction between the accrual of an action for breach of warranty of title and an action for breach of warranty of merchantability. Indeed, Official Comment 2 to UCC [§] 2-312 specifically notes that an action for breach of warranty of title is controlled by UCC [§] 2-725 and accrues when tender of delivery is made. See also Huff v. Hobgood, 549 So. 2d 951 (Sup. Ct. Miss. 1989) (statute of limitations on action for breach of warranty of title under UCC Article 2 begins to run when goods are tendered).").[5]

Finally, Plaintiffs' argument that New York's demand and refusal doctrine somehow tolls the accrual of their breach of warranty claim is irrelevant and unavailing. The doctrine concerns replevin actions against good-faith purchasers, not breach of contract claims, such as the one asserted in this action. See Solomon R. Guggenheim Foundation v. Lubell, 569 N.E.2d 426, 429 (N.Y. 1991); see also Ralph E. Lerner and

---

[5] Whether or not the drafters of the Model Uniform Commercial Code have amended it so as to modify the statute of limitation rules applied to the implied warranty of title provision is irrelevant to this action. This Court must apply the law of the State of New York--viz., the N.Y. U.C.C., which has yet to enact the amended version.

Judith Bresler, Art Law 270 (3d ed. 2005). Accordingly, Plaintiffs' breach of warranty claim is untimely.

    ii.  Negligent Misrepresentation

Plaintiffs' negligent misrepresentation claim is also untimely. Even if it were treated as a separate and distinct claim from Plaintiffs' U.C.C. breach of warranty claim, general New York statute of limitation rules apply. See supra note 2; N.Y. C.P.L.R. § 213(1) (imposing a six-year statute of limitations on actions which have no specific limitation). "A cause of action based on negligent misrepresentation accrues on the date of the alleged misrepresentation which is relied upon by the plaintiff." See Fandy Corp. v. Lung-Fong Chen, 262 A.D.2d 352, 353 (N.Y. App. Div., 2d Dep't, 1999); see also Von Hoffmann v. Prudential Ins. Co. of Am., 202 F. Supp. 2d 252, 263 (S.D.N.Y. 2002) (same); Espie v. Murphy, 35 A.D.3d 346, 347-48 (N.Y. App. Div., 2d Dep't, 2006); Certain Underwriters at Lloyd's, London v. William M. Mercer, Inc., No. 604515/02, 2005 WL 841012, *12 (N.Y. Sup. Ct., Apr. 12, 2005) ("A cause of action for negligent misrepresentation or constructive fraud is also governed by a six-year statute of limitations,

10

although the two-year discovery rule does not apply."). Here, any alleged misrepresentations relied upon by Plaintiffs would have taken place in May 1991--the date of the auction. Thus, this claim would have been time-barred as of May 1997, long before this action was commenced.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [dkt. no. 10] is GRANTED. The Clerk of the Court shall mark this action closed and all pending motions DENIED as moot.

SO ORDERED:

Dated:   New York, New York
         September 22, 2009

_____
LORETTA A. PRESKA, Chief U.S.D.J.